CHRISTOPHER KENNEDY,

        Plaintiff,

v.                                                                           Case No. 23-cv-1342-bhl

OFFICER ROMAN, et al.,

        Defendants.

## SCREENING ORDER

    Plaintiff Christopher Kennedy, who is currently serving a state prison sentence at the Racine Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. This matter comes before the Court on Kennedy's motion for leave to proceed without prepayment of the filing fee, motion to appoint counsel, and to screen the complaint. Dkt. Nos. 1-2, 7, & 9.

### MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE

    Kennedy has requested leave to proceed without prepaying the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. §1915(b)(1). Kennedy has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint, as required under 28 U.S.C. §1915(a)(2), and has been assessed and paid an initial partial filing fee of $29.35. The Court will grant Kennedy's motion for leave to proceed without prepaying the filing fee.

## SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, and dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555 (internal quotations omitted).

## ALLEGATIONS OF THE COMPLAINT

Kennedy is an inmate at the Racine Correctional Institution. Dkt. No. 1. Defendants are Officer Roman and Security Director Stephen Olk. *Id.* at 1-2.

On July 6, 2023, Correctional Officer Michael Farr (not a defendant) conducted a Urinary Analysis (UA) and then took Kennedy to segregation. *Id.* at 2. At that time, Kennedy was wrongfully accused of using Fentanyl. *Id.* Two days later, on July 8, 2023, Kennedy tried to explain to Officer Roman that he needed medication for Hepatitis C, along with his psych medication, but Officer Roman would not help him present this information to the sergeant passing out the medication. *Id.* On an unknown date, Security Director Olk "approved" a Major Conduct Report for Use of Intoxicants, for which Kennedy received a sentence of 60-days segregation. *Id.* About two weeks later, on July 17, 2023, Kennedy's lab results came back negative for Fentanyl. *Id.* at 2-3. Kennedy's Major Conduct Report was then dismissed, and he returned to general population that day. *Id.* at 3. For relief, Kennedy seeks monetary damages. *Id.* at 4.

## THE COURT'S ANALYSIS

"To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that he or she was deprived of a right secured by the Constitution or the laws of the United States, and that this deprivation occurred at the hands of a person or persons acting under the color of state law." *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)).

Kennedy alleges that Security Director Olk violated his Fourteenth Amendment right to due process and that Officer Roman violated his Eighth Amendment right to medical care. Dkt.

3

No. 1 at 2. Kennedy also alleges that the Wisconsin Department of Corrections (DOC) violated the Americans with Disabilities Act (ADA). *Id*. at 3.

The Court will dismiss this case for failure to state a claim. To state a claim under the Fourteenth Amendment, Kennedy must allege that the state deprived him of liberty or property without due process of law. *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007) (citing *Rowe v. DeBruyn*, 17 F.3d 1047, 1053 (7th Cir. 1994)). To trigger a liberty interest in avoiding disciplinary segregation, a prisoner must allege conditions that constitute an "atypical and significant hardship." *Sandin v. Conner*, 515 U.S. 472, 487 (1995). If conditions are "significantly harsher than those in the normal prison environment," then a liberty interest may arise. *Marion v. Columbia Correctional Inst*., 559 F.3d 693, 697-98 (7th Cir. 2009). But "six months of segregation is not such an extreme term and, standing alone, would not trigger due process rights." *Id*. at 698.

Kennedy alleges that he served 11 days in disciplinary segregation, and he does not describe the conditions of his confinement during that time. These allegations come nowhere close to the "atypical and significant hardship" required to trigger a liberty interest. *See Marion*, 559 F.3d at 698. Therefore, Kennedy fails to state a Fourteenth Amendment due process claim against Security Director Olk.

Kennedy alleges that Officer Roman would not help him acquire medication on July 8, 2023. He alleges that a different individual, a "sergeant," was responsible for passing out the medication that day and Officer Roman refused to speak to him to explain the circumstances. The law is well established that prison personnel are not responsible for all functions within the prison. *Burks v. Raemisch*, 555 F.3d 592, 594-95 (7th Cir. 2009). Put more bluntly, Officer Roman is not responsible for doing someone else's job. *Id*. Therefore, Kennedy fails to state a claim against Officer Roman.

4

Finally, Kenney alleges that the DOC violated the ADA.  Kennedy did not list the DOC as a defendant in the case nor does he explain what disability he allegedly has or what programs or services he believes he was denied access to due to his disability.  *See Love v. Westville Corr. Ctr.*, 103 F.3d 558, 560 (7th Cir. 1996) (To state an ADA claim, a plaintiff must allege that "he is a qualified individual with a disability, that he was denied the benefits of the services, programs, or activities of a public entity or otherwise subjected to discrimination by such an entity, and that the denial or discrimination was by reason of his disability.").  Therefore, Kennedy also fails to state a claim against the DOC under the ADA; and the Court will dismiss the original complaint for failure to state a claim.

The dismissal is not final, however.  As a general matter, *pro se* plaintiffs are allowed at least one chance to amend an inadequately pleaded complaint.  *See Boyd v. Bellin*, 835 F. App'x 886, 889 (7th Cir. 2021).  The Court will therefore give Kennedy an opportunity to file an amended complaint to cure the deficiencies described above.  The Court will enclose a guide for *pro se* prisoners that explains how to file an amended complaint that the Court can effectively screen.  The Court also will include a blank prisoner amended complaint form.  The Court will require Kennedy to use that form to file his amended complaint.  *See* Civ. L. R. 9 (E.D. Wis.).  If Kennedy believes he needs more space than is available in the blank prisoner amended complaint form, he may attach a *maximum* of five typed, double-spaced pages.  The amended complaint should be no more than <u>ten</u> pages total.

Kennedy is advised that the amended complaint must bear the docket number assigned to this case.  The amended complaint replaces the prior complaint and must be complete in itself without reference to the original complaint.  *See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1056–57 (7th Cir. 1998).  In *Duda*, the appellate court emphasized

that in such instances, the "prior pleading is in effect withdrawn as to all matters not restated in the amended pleading." *Id.* at 1057 (citation omitted). If Kennedy files an amended complaint, the Court will screen it as required by 28 U.S.C. §1915A. If Kennedy does not file an amended complaint, the Court will likely dismiss this case.

## MOTION TO APPOINT COUNSEL

Kennedy also filed a motion to appoint counsel. Dkt. No. 9. He states that he is unable to afford counsel; his incarceration will limit his ability to litigate the case; the issues in the case are complex; he has limited access to the law library; he has no legal knowledge; and a trial will likely involve conflicting testimony. *Id*.

In a civil case, the Court has discretion to recruit a lawyer for individuals who cannot afford to hire one. *Navejar v. Iyola*, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866-67 (7th Cir. 2013). In exercising its discretion, the Court must consider two things: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021) (quoting *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007)). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" *Henderson v. Ghosh*, 755 F.3d 559, 564 (7th Cir. 2014) (quoting *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014)).

To satisfy the first prong, the Court must determine that a plaintiff made a good faith effort to hire counsel on his own. *Pickett v. Chicago Transit Auth.*, 930 F.3d 869, 871 (7th Cir. 2019). "This is a mandatory, threshold inquiry that must be determined before moving to the second

6

inquiry." *Eagan*, 987 F.3d at 682. To demonstrate he satisfied the first prong, Kennedy must show he contacted at least three lawyers and provide the Court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims." *Eagan*, 987 F.3d at 682. When considering the second prong, the Court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." *Pennewell v. Parish*, 923 F.3d 486, 490 (7th Cir. 2019). The Court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." *Id.* This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." *Id.* at 490-491. The Court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." *Id.* at 491. In situations where the plaintiff files his motion in the early stages of the case, the Court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." *Pickett,* 930 F.3d at 871.

Kennedy has not provided any evidence showing that he made reasonable attempts to recruit counsel on his own. *See* Dkt. No. 9. This is a "mandatory, threshold inquiry that must be determined before moving to the second inquiry." *Eagan*, 987 F.3d at 682. Therefore, the Court will deny the motion to appoint counsel without prejudice. Kennedy may refile the motion after

he makes reasonable attempts to recruit counsel on his own. In that motion, he should also explain why the case is too complex for him to litigate on his own.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Kennedy's first motion for leave to proceed without prepayment of the filing fee (Dkt. No. 2) is **GRANTED**; and his second motion for leave to proceed without prepayment of the filing fee (Dkt. No. 7) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Kennedy's motion to appoint counsel (Dkt. No. 9) is **DENIED without prejudice**.

**IT IS FURTHER ORDERED** that the complaint is **DISMISSED** because it fails to state a claim. Kennedy may file an amended complaint that complies with the instructions in this order by **January 11, 2024**. If Kennedy files an amended complaint by the deadline, the Court will screen it as required by 28 U.S.C. §1915A. If Kennedy does not file an amended complaint by the deadline, the Court will likely dismiss this case.

**IT IS FURTHER ORDERED** that the Clerk's Office mail Kennedy a blank prisoner amended complaint form and a copy of the guide entitled "Guide to Filing Prisoner Complaints Without a Lawyer in the United States District Court for the Eastern District of Wisconsin," along with this order.

**IT IS FURTHER ORDERED** that the agency having custody of Kennedy shall collect from his institution trust account the **$320.65** balance of the filing fee by collecting monthly payments from Kennedy's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If

Kennedy is transferred to another institution, the transferring institution shall forward a copy of this Order along with Kennedy's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that copies of this order be sent to the officer in charge of the agency where Kennedy is located.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for filing to the Court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Kennedy is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin on December 12, 2023.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge